UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Reger, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| The Associated Press, | **(JURY TRIAL DEMANDED)** |
| Defendant. | |

Plaintiff, for his Complaint against Defendant, states and alleges as follows:

### INTRODUCTION

This is a defamation action brought by a private individual against a national wire service. The wire service defamed him, both directly and by implication, by falsely reporting with malice and in bad faith that he had been convicted of federal criminal securities fraud and stock manipulation and falsely implied that he was going to be sentenced to prison, in the context of a civil shareholder suit, without any legitimate purpose or duty.

### PARTIES

1. Plaintiff Michael Reger (hereinafter "Plaintiff" or "Reger") is a resident and citizen of Minnesota.

2. Defendant Associated Press ("AP") is incorporated under the laws of New York with its headquarters and principal place of business in New York. AP is licensed to do business in Minnesota and has offices in Minneapolis and St. Paul, Minnesota.

**VENUE AND JURISDICTION**

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because a substantial part of the events, conduct, or omissions giving rise to Plaintiff's claim occurred in this district and much of the harm that Plaintiff suffered was directed at and occurred in this district.

**BACKGROUND**

5. Reger is the Founder, Chairman Emeritus, and former Chairman, CEO, and President of Northern Oil and Gas, Inc., a New York Stock Exchange listed company with a market capitalization (market cap) of approximately $4 billion.

6. Reger had been named as a defendant, along with ten others, in a **civil** case brought in 2016 in the federal district court for the Southern District of New York by a group of shareholders of Dakota Plains Holdings, Inc. ("Dakota Plains"), *Gruber v. Gilbertson*, 16-cv-9727 (JSR) (S.D.N.Y.) ("*Gruber*") (emphasis added).

7. The claims asserted against Reger in that civil case included: (a) securities fraud; (b) control person liability for Dakota Plains' security fraud; and (c) insider trading.

8. All of the other defendants named in the civil lawsuit settled with the plaintiff immediately prior to the trial. Reger did not.

2

9. On June 14, 2022, the jury reached a verdict in *Gruber*. The jury found Reger liable for the claim of civil securities fraud, liable as a control person for Dakota Plains, and not liable for a civil claim of insider trading. *See* Ex. A (6/14/22 civil verdict form in *Gruber*).

10. On June 16, 2022, the MINNEAPOLIS STAR TRIBUNE ("STAR TRIBUNE") published an article which accurately reported on the details of the *Gruber* civil jury verdict as well as other matters. *See* Ex. B (Mike Hughlett, *Jury finds Minnesota oilman Michael Reger liable for Dakota Plains securities fraud,* MINNEAPOLIS STAR TRIBUNE, June 16, 2022, located at https://www.startribune.com/jury-finds-minnesota-oilman-michael-reger-liable-fordakota-plains-securities-fraud/600182668)("STAR TRIBUNE article").

11. The headline of the STAR TRIBUNE article correctly reported that: "*Jury finds Minnesota oilman Michael Reger **liable** for Dakota Plains securities fraud.*" *Id.* (emphasis added). The STAR TRIBUNE's headline thus clearly reported civil liability and not any criminal charge or finding of guilt.

12. The STAR TRIBUNE article accurately described the federal civil litigation between shareholders of Dakota Plains and various defendants, including Reger. *Id.*

13. The STAR TRIBUNE article correctly reported that: "A federal jury this week found that former Minnesota oil industry executive Michael Reger was **responsible** for securities fraud…." *Id.* (emphasis added).

14. The STAR TRIBUNE article truthfully stated that the jury "found that Reger was **liable** for securities fraud, but not for insider trading." *Id.* (emphasis added).

3

15. The STAR TRIBUNE article further noted that the judge in the *Gruber* case would at some later time "decide any damages **Reger must pay to shareholders**." *Id.* (emphasis added). (It should be noted that the judge in *Gruber* issued that final decision regarding damages on September 19, 2023. The judge ruled that Reger is responsible for merely a small fraction of the amount that Plaintiffs had originally sought in *Gruber*, that is, several hundred thousand dollars, which is nowhere near the $60 million to $80 million in damages that Plaintiffs had originally alleged in that civil case.)

16. The STAR TRIBUNE article that initially reported on the *Gruber* civil verdict further revealed that "a 2017 indictment" issued by the SEC concerning Dakota Plains "**didn't mention Reger**." *Id.*

17. The STAR TRIBUNE article did mention that another person involved in Dakota Plains, Ryan Gilbertson, had been earlier charged by a federal grand jury and had been convicted of various crimes in 2018 in an entirely separate criminal proceeding, *id.*, but the STAR TRIBUNE article clearly and truthfully differentiated between Gilbertson's criminal conviction and Reger's involvement **solely** in the Dakota Plains civil shareholder litigation, **but not in any criminal matters related to Dakota Plains** or otherwise. *Id.*

18. The STAR TRIBUNE article **never mentioned** another individual, Douglas Hoskins, who had also been convicted and sentenced on criminal charges in a separate criminal proceeding relating to Dakota Plains. *See infra* (discussing AP's inclusion of Hoskins in its defamatory article).

19. The accuracy of the STAR TRIBUNE article as to Reger is borne out by the jury verdict form in *Gruber*. *See* Ex. A (jury verdict).

20. Despite the accuracy of the STAR TRIBUNE's reporting of the *Gruber* jury verdict, there was an AP article on the internet which reported (from Minneapolis) on that same verdict later that same day which clearly defamed Reger by falsely claiming, both in the headline and throughout the article, that Reger had been "**convicted**" of securities fraud. *See* AP Wire (Minneapolis), *Former Minnesota oil executive convicted of securities fraud,* June 16, 2022, which is located at apnews.com/article/politics-minnesota-minneapolis-lawsuitsb8ca96f4fd87c2801b7ba9dbdd9d5278. That June 16, 2022 AP article is attached hereto as Exhibit C ("AP article").

21. The AP article incorrectly reported that Reger "has been **convicted** in a stock manipulation scheme," and that "[a] federal jury in New York on Tuesday found Michael Reger **guilty of securities fraud.**" *Id*. (emphasis added).

22. In addition, the AP article falsely recounted that "Reger was **acquitted** of insider trading." *Id.* (emphasis added). That allegation is false on its face because the term "acquitted" is not used in civil litigation; only in criminal matters.

23. The AP article alleges that Reger had been "convicted in a stock manipulation scheme" and had been "found guilty of securities fraud" are also false on their face. *Id.*

24. There is no legitimate justification for AP's deliberate and clearly incorrect defamatory statements, particularly where AP's defamatory article **specifically cites** to the

earlier STAR TRIBUNE article, an article which correctly reported on the jury verdict in *Gruber* as well as on other matters. *See supra* (discussing STAR TRIBUNE article).

25. The use of the phrase "acquitted" also implies that Reger had been charged with and tried for another crime (in addition to stock manipulation and securities fraud), that is, a criminal charge of insider trading.

26. As set forth more fully below, the AP allegations are also false by implication because the article omitted a critical predicate fact and juxtaposed information to clearly and falsely imply that Reger had engaged in criminal misconduct and was going to be sentenced to prison as a result.

27. The phrases "convicted," "guilty," and "acquitted" carry with them the undeniable stigma of criminal conduct, indeed felonious conduct, which rises to the level of moral turpitude.

28. The use of the term "acquitted," while on its face exculpatory, nonetheless also carries a significant stigma because it is undeniable that even in cases where a criminal defendant is acquitted, a substantial number of people would still conclude that the person was guilty of the crime for which he or she had been charged and that the prosecution had merely failed to prove the charged individual's guilt beyond a reasonable doubt. In other words, people believe in such cases that where there is smoke, there is fire, and that a person would not have been facing a criminal charge without a legitimate basis for the prosecution.

29. That stigma and the patently false implication that Reger had either been charged with and convicted of crimes was assured by AP's omission of key facts that had been correctly reported in the STAR TRIBUNE article, including, among other things, that "a 2017 indictment" **issued by the SEC regarding Dakota Plains** "didn't mention Reger." *See* Ex. B (STAR TRIBUNE article).

30. AP's omission of that key fact, that Reger had **not** been indicted, is particularly important because the AP article also defamed Reger by implication.

31. AP's defamation by implication was caused by AP's defamatory and false use of the phrases "convicted" and "acquitted" in juxtaposition with AP's reference in its article to two other individuals, who were both (unlike Reger) indicted, **convicted** and imprisoned for criminal violations related to Dakota Plains. *See* Ex. C (AP article)(stating that "Douglas Hoskins, was **sentenced in 2018** for [sic] two years **in prison for his role in the scheme**")(emphasis added); *id*. (Ryan "Gilbertson was **convicted** in 2018 and **sentenced to 12 years in prison** for wire fraud, **securities fraud** and conspiracy to commit securities fraud.")(emphasis added); *id*. ("Gilbertson **agreed to testify against Reger** as part of Gilbertson's **zero dollar** settlement" in the civil shareholder lawsuit) (emphasis added).

32. The resulting defamation by implication is that Reger, who reportedly had been "convicted," was going to be sentenced to prison like these two other defendants, Gilbertson and Hoskins. *See id*.

33. AP's reference to Hoskins was particularly egregious as the AP article clearly

7

(and falsely) implied that Hoskins had been convicted and sentenced because Hoskins (like Reger) was **a defendant in the civil case AP was reporting on** (that is, *Gruber*), by claiming that: "**A third defendant in the case**, Douglas Hoskins, was **sentenced in 2018** for [sic] two years **in prison for his role in the scheme**." *Id*. (emphasis added).

34. Thus, a reader of the AP article would conclude that Hoskins was in prison solely as a result of his role as a defendant in *Gruber*. A reader would not be able to discern solely from the face of the AP article that Hoskins, as well as Gilbertson, had actually been convicted and sentenced in entirely different (and truly criminal) proceedings.

35. Moreover, AP's reference to Hoskins was apparently a function of its own "reporting" because the earlier, correct STAR TRIBUNE article never mentioned Hoskins. *Compare* Ex. C (AP article) *with* Ex. B (STAR TRIBUNE article); *see also supra* (noting same).

36. The defamation by implication was further exacerbated by AP's inclusion of hyperlinks in the article which directed the reader to other articles which reported on the criminal convictions and sentencings of Hoskins and Gilbertson. *See* Ex. C (AP article).

37. Those hyperlinks were specifically positioned on the phrases regarding Gilbertson "**sentenced in 2018**" and "**sentenced to 12 years in prison**," again underscoring AP's defamation by implication regarding Reger's purported criminal conduct and the strong, resulting inference that Reger was also going to be sentenced and sent to prison as a result of the jury verdict in *Gruber*. *Id*.

38. The "convicted," "guilty," and "acquitted" phrases regarding security fraud, stock manipulation, and insider trading are not opinions because, among other things, the facts underlying those charges are provable as false.

39. AP's defamatory allegations are rather statements of "fact," albeit false facts, and AP's allegations were made with malice, that is, with either knowledge of its falsity or false implication or with negligent or reckless disregard of its truth or falsity, or the falsity of the clear implication.

40. AP's defamation by implication is not opinion because, among other things, the facts relating to the civil case in which Reger was involved (as well as the facts underlying the independent criminal proceedings against Gilbertson and Hoskins) are demonstrably provable. *See, e.g.*, Ex. A (*Gruber* jury verdict form).

41. AP's defamatory allegations are rather statements of fact, albeit false facts, and AP's allegations were made with malice, that is, with either knowledge of their falsity or false implication or with negligent or reckless disregard of their truth or falsity, or the truth or falsity of the clear implications based on AP's insinuating references to Gilbertson and Hoskins.

42. This is clearly demonstrated by AP's **specific citation** to the earlier STAR TRIBUNE article from that same day, an article that correctly and properly reported on the civil jury verdict in *Gruber* as well as other matters, including the STAR TRIBUNE's clear description and differentiation of Gilbertson's criminal conviction. *See* Ex. C (citing STAR TRIBUNE article*); see* Ex. B; *see also supra* (noting same).

43. AP's false allegations of a criminal conviction, a finding of "guilt," and an acquittal against Reger, as well as AP's defamation of Reger by implication, were done without any legitimate purpose, justification, or excuse.

44. Reger has suffered and will continue to suffer damages as a result of AP's defamatory article.

45. For example, Reger has lost substantial income and employment opportunities, including, among other things, the potential of several multi-million-dollar partnerships.

46. Reger's homeowners insurance was also cancelled specifically because the insurance company had seen AP's article and its false report of Reger's alleged conviction of a felony during the policy period.

47. Reger was removed from board positions that he had held before the AP article was published.

48. Reger was also removed from the Northern Oil and Gas, Inc. website, which had included Reger's role as its Founder and Chairman Emeritus, as a result of AP's defamatory report.

49. Reger has also learned that rumors have been circulating that he is either in jail or is scheduled to be incarcerated.

50. For example, Reger's young sons would come home from school crying because other kids on the bus had said, "I heard your dad is going to jail."

51. The AP defamatory article has given increased credence to these rumors by reporting, falsely, that Reger had been "convicted," "found guilty," and also reported in that same article on other individuals who really had been convicted and are now serving, or had served, jail sentences.

52. In addition, Reger was denied the ability to open up investment trading accounts and other types of accounts after AP published its defamatory article.

53. Reger has also lost significant standing in both his personal and business communities. Among other things, at least one member of Reger's country club lobbied for the termination of his family's membership as a result of the AP's defamatory article.

54. AP knew or should have known that other websites and media outlets would rely on AP as a wire service and other websites or media outlets would therefore republish (and did republish) AP's defamatory article, thus substantially exacerbating the damages Reger has suffered as a result of AP's defamation.

55. For example, on June 16, 2022, U.S. News rebroadcast AP's defamatory report. *See, e.g.*, Ex. D (U.S. News website rebroadcast).

56. Other print and media outlets have also republished AP's defamation, including, for example, the website of the St. Cloud radio station, KNSI, *Former Minnesota Oil Executive Convicted of Securities Fraud*, June 17, 2022 (citing AP), which is located at https://knsiradio.com/2022/06/17/former-minnesota-oil-executive-convicted-of-securities-fraud, and the Oklahoma City legal and business newspaper, THE JOURNAL RECORD, *Former Oil Executive Convicted of Securities Fraud*, June 17, 2022 (citing

11

AP), at https://journalrecord.com/2022/06/17/former-oil-executive-convicted-of-securities-fraud, and a number of others.

57. To this day, if you Google "Mike Reger" or "Michael Reger," the defamatory AP article is the first site that comes up.

58. As a result, Reger brings this action against AP.

## COUNT I
(Defamation)

59. Reger reincorporates all of the paragraphs of the Complaint as though fully set forth herein.

60. AP's claim that Reger had "been convicted in a stock manipulation scheme" is demonstrably false on its face.

61. AP's report that a jury found Reger "guilty of securities fraud" is demonstrably false on its face.

62. AP's allegation that a jury "acquitted" Reger "of insider trading" is demonstrably false on its face.

63. The terms "convicted," "guilty," and "acquitted" are not used in civil cases; only in criminal cases.

64. The allegations that Reger was "convicted" in a stock manipulation scheme, that he was "guilty" of securities fraud and "acquitted" of insider trading are not opinions because all of those allegations and the clear implications underlying those charges are provable as false, as clearly shown by the *Gruber* civil jury verdict form. *See* Ex. A.

65. The criminal allegations are instead statements of fact, albeit false facts, and the allegations were made with malice, that is, either knowledge of their falsity or false implication or negligent or reckless disregard of their truth or falsity, or the truth or falsity of the clear implications in the AP article.

66. The foregoing is unquestionably demonstrated by AP's **specific citation** to the STAR TRIBUNE article that had been published earlier that same day, an article that correctly and properly reported on the civil jury verdict in *Gruber*.

67. AP's defamation was done in bad faith and without a proper motive on a proper occasion because AP clearly had access to (and indeed expressly cited) the truthful and accurate STAR TRIBUNE article.

68. AP's defamatory allegations have damaged Reger's reputation and lowered his estimation in the community.

69. AP knew or should have known that other websites and other media outlets would rely on AP as a national wire service and those outlets would (and did) republish AP's defamatory article, thus substantially exacerbating the damages Reger has suffered as a result of AP's defamation.

70. As a result of AP's defamation, Reger has suffered damages in excess of $50,000,000.00 in an amount to be proven at trial, as well as costs and attorneys' fees.

## COUNT II
(Defamation by Implication)

71. Reger reincorporates all of the paragraphs of the Complaint as though fully set forth herein.

72. AP's false report that Reger was "convicted" in a stock manipulation scheme, found "guilty" of securities fraud, and "acquitted" of insider trader all falsely imply that Reger was charged with and was actually convicted of criminal behavior which involved moral turpitude.

73. AP's article also omitted a critical fact that had been published in the earlier STAR TRIBUNE article, specifically that Reger had **not** been indicted at all.

74. AP's omission of that critical fact is key because the resulting article thus confused *Gruber*, a civil action, with other, separate criminal proceedings against Gilbertson (and by implication, Hoskins), in which Reger was NOT involved, never charged, and clearly never convicted.

75. AP's omission of that critical fact also exacerbated AP's defamation by implication, which was caused by AP's defamatory and false use of the phrases "convicted" and "acquitted" in juxtaposition with AP's reference in its article to Gilbertson and Hoskins, two other individuals who were both (unlike Reger) indicted, **convicted**, and imprisoned in separate criminal proceedings for criminal violations relating to Dakota Plains.

76. The resulting defamation by implication is, among other things, that Reger was also "convicted" of a crime and that Reger, like those two (criminal) defendants, was going to be sentenced to prison.

77. AP's reference to Hoskins was particularly egregious because it clearly (and falsely) implied that Hoskins had been convicted and sentenced because Hoskins (like

14

Reger) had been **a co-defendant in the civil case that was being reported on in the AP article**, that is, *Gruber*.

78. A reader of the AP article would not be able to discern that Hoskins (and Gilbertson) had actually been convicted and sentenced in entirely different (and truly criminal) proceedings.

79. The stigma and patently false implication that Reger was going to be sentenced to prison as a result of his alleged "convictions" was assured by AP's failure to report that Reger had NOT been indicted in any case. The inclusion of that critical fact (which was correctly reported in the STAR TRIBUNE article) would have at least called into question AP's clearly false allegations that Reger had been "convicted in a stock manipulation scheme" and that he was "guilty of securities fraud."

80. The defamation by implication was further exacerbated by AP's inclusion of hyperlinks in its article which were expressly positioned on phrases in the article which referred to criminal sentencings and directed the reader to other articles that reported on the criminal convictions and sentencings of Hoskins and Gilbertson.

81. These hyperlinks cement the inference that Reger was also going to be sentenced and sent to prison as a result of the jury verdict in *Gruber*.

82. AP's defamation by implication is not an opinion because the facts underlying the defamation by implication are provable.

83. AP's defamation by implication was made with malice, that is, with either knowledge of its falsity or false implication or negligent or reckless disregard of its truth or falsity or the truth or falsity of the clear implications.

84. AP's defamation was done in bad faith and without a proper motive on a proper occasion because AP clearly had access to (and indeed expressly cited) the earlier, truthful STAR TRIBUNE article about the *Gruber* verdict and other matters.

85. The defamation by implication has damaged Reger's reputation and lowered his estimation in the community, and importantly, the business community.

86. AP knew or should have known that other websites and media outlets would rely on AP as a wire service and would (and did) republish AP's defamatory article, thus substantially exacerbating the damages Reger has suffered as a result of AP's defamation.

87. As a result, Reger has suffered damages in excess of $50,000,000.00 in an amount to be proven at trial, as well as costs and attorneys' fees.

**COUNT III**
(Defamation per se)

88. Reger reincorporates all of the paragraphs of this Complaint as though fully set forth herein.

89. Allegations are defamatory per se if they falsely accuse a person of a crime.

90. Here, not only does AP expressly and falsely accuse Reger of a crime, it wrongly reports that Reger had been "convicted" and found "guilty" of crimes involving moral turpitude, that Reger was "acquitted" of insider trading, and also, by defamatory

16

implication, that Reger would, among other things, be sentenced to prison for the crimes of which he had been allegedly convicted or found guilty.

91. AP's defamation per se was done in bad faith and without a proper motive on a proper occasion because AP clearly had access to (and indeed expressly cited) the earlier, truthful STAR TRIBUNE article about the *Gruber* verdict and other matters.

92. AP's defamation per se did not involve opinions because the underlying facts are provable.

93. AP's defamatory per se instead involved statements of fact, albeit false facts, and the defamation per se was made with malice, that is, made with either knowledge of its falsity or false implication or negligent or reckless disregard of its truth or falsity, or the truth or falsity of the clear implications.

94. AP's defamation per se has damaged Reger's reputation and lowered his estimation in the community.

95. AP knew or should have known that other websites and media would rely on AP as a wire service and would (and did) republish AP's defamatory article, thus substantially exacerbating the damages Reger has suffered as a result of AP's defamation.

96. As a result, Reger has suffered damages in excess of $50,000,000.00 in an amount to be proven at trial, as well as costs and attorneys' fees.

**COUNT IV**
(Intentional Infliction of Emotional Distress)

97. Reger reincorporates all of the paragraphs of the Complaint as though fully set forth herein.

98. AP's unnecessary and scandalous criminal accusations regarding Reger that were demonstrably false and also implied that he was going to be sentenced to prison were extreme, outrageous and intentional or reckless.

99. AP's baseless and extraordinarily damaging criminal allegations were particularly extreme and outrageous because AP clearly had access to (and indeed expressly cited) the earlier, truthful STAR TRIBUNE article about the *Gruber* verdict and other matters.

100. AP is given great deference as a wire service and that deference is unwarranted here as a result of AP's complete failure to review or reckless disregard of the earlier, truthful STAR TRIBUNE article, an article of which AP was clearly aware.

101. Reger has been damaged as a result of AP's extreme, intentional, and outrageous misconduct.

102. As a direct result, Reger has suffered severe mental and emotional distress directly caused by AP's extreme, intentional, and outrageous misconduct, and he is now taking both anti-anxiety and sleep medication as a result.

103. In addition, Reger continues to have anxiety and emotional distress resulting from the scandalous charges made by AP; charges that continue to have a ripple effect as people avoid Reger, Reger is refused opportunities that would have been opened to him in the past, his homeowners insurance had been cancelled because it was believed that Reger was a convicted felon, Reger has been removed from board positions, and Reger's income prospects have evaporated.

104. As a result, Reger has suffered damages in excess of $50,000,000.00 in an amount to be proven at trial, as well as costs and attorneys' fees.

WHEREFORE, Plaintiff prays for judgment in his favor, as against the Defendant, as follows:

1. Damages to be proven at a jury trial in excess of $50,000,000.00;

2. Reasonable costs, disbursements fees and interest thereon; and

3. Such other relief as the court deems just and equitable.


Dated: September 26, 2023               BERENS & MILLER, P.A.

                                        _____
                                        Barbara Podlucky Berens, #209788
                                        3720 IDS Center
                                        80 South Eighth Street
                                        Minneapolis, Minnesota 55402
                                        (612) 349-6171

                                        *Attorneys for Plaintiff Michael Reger*