## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael Reger,                                    No. 23-cv-2983 (DSD/DLM)

          Plaintiff,

                                           **ORDER ON DEFENDANT'S**
v.                                                  **MOTIONS TO COMPEL**

The Associated Press,

          Defendant.

This matter is before the Court on three motions that Defendant The Associated Press ("The AP") filed to compel discovery responses from Plaintiff Michael Reger, as well as subpoena responses from non-parties Northern Oil & Gas, Inc., and Mr. Bahram Akradi.

## BACKGROUND

This case centers around an article The AP published on June 16, 2022 about Michael Reger, one of the founders and principals of oil and gas company Dakota Plaints Holdings, Inc. In 2016, a group of Dakota Plains shareholders filed a civil lawsuit against Mr. Reger and ten others, alleging securities fraud, control person liability, and insider trading. While the other defendants settled, Mr. Reger took his case to trial. On June 14, 2022, a jury found Mr. Reger civilly liable for securities fraud and as a control person for Dakota Plains; he was found not liable for insider trading. Although Mr. Reger had been involved in a civil trial, The AP reported in its June 16 article that he had been convicted of securities fraud and stock manipulation, but acquitted of insider trading.

1

Mr. Reger then sued The AP alleging defamation, defamation by implication, defamation per se, and intentional infliction of emotional distress, and claiming over $50,000,000.00 in damages. (Doc. 1.) The AP moved to dismiss Mr. Reger's Complaint, arguing that because he is a "limited purpose public figure" he must show that The AP's allegedly defamatory statements were made with "actual malice." (Doc. 18 at 21.) The Court denied The AP's motion to dismiss in part. (Doc. 34.) Judge Doty concluded that it was premature at the motion to dismiss stage to determine whether Mr. Reger is a limited purpose public figure as the "determination require[d] further factual development." (*Id*. at 6.) The AP then answered Mr. Reger's Complaint, raising the affirmative defense that the allegedly defamatory statements in the article were not made with actual malice. (Doc. 36 at 14.)

### *The AP's Motion to Compel Discovery Responses from Plaintiff Michael Reger*

Once discovery began, The AP served several sets of discovery requests on Mr. Reger. Its First and Second Sets of Discovery Requests are at issue in present motion. The First Set of Discovery Requests, from The AP's view, aims to establish the "substantial truth" of its report; that Mr. Reger is a limited purpose public figure; that Mr. Reger cannot establish $50 million in damages; and that The AP's report was not the proximate cause of any alleged reputational harm Mr. Reger suffered. (Doc. 78 at 10.) According to The AP, its Second Set of Discovery Requests seeks information about Mr. Reger's reputation; his financial transactions; and Mr. Reger's efforts "to obtain evidence from individuals related to this litigation." (*Id*. at 11.)

The AP concedes that Mr. Reger has "produced 232 documents in response to its discovery requests" and "some records of significance, including excerpts from his 2016-2022 tax returns and some documents regarding his suspension from his country club," but contends there are "significant gaps in the material it has requested and to which it is entitled." (*Id*.) As a result, The AP has moved the Court to compel discovery responses from Mr. Reger. (Docs. 76 (Motion), 78 (Memorandum).) The AP insists that because Mr. Reger cannot show the information it seeks is either irrelevant or unduly burdensome, it is "entitled to all the documents and interrogatory responses it seeks from [Mr.] Reger in its First and Second Discovery Requests." (Doc. 78 at 22.) The AP also asks the Court to find that it is entitled to reasonable attorneys' fees that it incurred litigating this motion.

Mr. Reger opposes The AP's motion to compel, objecting to what he considers The AP's overly broad and irrelevant discovery requests "spanning a period of almost twenty years." (Doc. 104 at 1.) In Mr. Reger's estimation, The AP's discovery requests have no real goal and are meant merely to "muddy the waters with even more false allegations and defamatory attacks." (*Id*. at 2.) Mr. Reger also argues that The AP consistently challenges his representations about his production of documents, but that he "cannot be required to produce documents that do not exist." (*Id*. at 5.) Mr. Reger thus implores the Court to "preclude The AP from obtaining such overly broad and irrelevant discovery," deny The AP's motion to compel, and deny its motion for costs and attorneys' fees. (*Id*.)

3

***The AP's Motion to Compel Production of Documents Responsive to Subpoena to Northern Oil and Gas, Inc.***

Along with its motion to compel discovery responses from Mr. Reger, The AP has also moved the Court for an order compelling the production of documents responsive to a subpoena it served on non-party Northern Oil and Gas, Inc. ("NOG"). (Docs. 83 (Motion) 85 (Memorandum).) Mr. Reger founded NOG, and is its former chairperson and CEO. He alleges in his Complaint that because of The AP's article he was "removed from the [NOG's] website." (Doc. 1 ¶ 48.) The AP represents that in his initial disclosures Mr. Reger lists NOG's current chairperson Bahram Akradi as likely having discoverable information about how The AP's article damaged Mr. Reger's reputation at NOG. The AP also represents that Mr. Reger, in a different lawsuit against NOG, claimed that *it* had destroyed his reputation, raising questions, from The AP's perspective, about the proximate cause of Mr. Reger's reputational harm. The AP attests that it subpoenaed NOG for documents pertaining to Mr. Reger's termination, removal, and reinstatement to NOG, including references to him on NOG's website; Mr. Reger's reputation; references to The AP, its report, or this lawsuit; any publicity or reporting about Mr. Reger in NOG's possession; other lawsuits Mr. Reger has been part of, including against NOG, and by NOG shareholders against Mr. Reger. (Doc. 85 at 2.)

NOG contends that "[o]nly a small fraction of The AP's subpoena has anything to do with this case." (Doc. 110 at 2.) Questions of relevance notwithstanding, NOG represents that it has produced documents back to January 1, 2022, related to: "(1) The AP; (2) the [a]rticle; (3) references to [Mr.] Reger on NOG's website; and (4) [Mr.] Reger's

reputation. NOG has also produced its communications with [Mr.] Reger dating back to June 16, 2022, the date the Article was published." (*Id*. at 2-3.) But NOG objects to the production of any additional documents. The AP thus filed the present motion to compel NOG to produce documents responsive to its subpoena.

NOG opposes The AP's motion to compel and argues that it should be denied because The AP's discovery requests are unduly burdensome, unnecessary, and irrelevant. Moreover, in NOG's estimation, it has already satisfied its discovery obligation by producing documents that bear on its connection to the case. Finally, NOG asks the Court to award it attorneys' fees for The AP's failure to take reasonable steps to avoid unduly burdening it before issuing such a subpoena.

### *The AP's Motion to Compel Production of Documents Responsive to Subpoena to Bahram Akradi*

Finally, The AP has moved the Court to compel the production of documents responsive to a subpoena it served on non-party Bahram Akradi, chairperson of NOG. (Docs. 112 (Motion), 114 (Memorandum).) The AP represents that Mr. Reger listed Mr. Akradi in his initial disclosures and discovery responses as someone with discoverable information concerning damage to his reputation both generally and at NOG. According to The AP, its subpoena seeks information "well within the scope of discovery." In particular, The AP seeks documents related to the circumstances of Mr. Akradi's joining the NOG board; Mr. Reger's termination, removal, and reinstatement to NOG, including references to Mr. Reger on NOG's website; Mr. Reger's reputation and alleged damages; The AP, its article, or this lawsuit; any publicity or reporting about Mr. Reger; any illegal or criminal

activity by Mr. Reger, or interactions with law enforcement; the financial transaction history between Mr. Reger and Mr. Akradi; and lawsuits Mr. Reger participated in against NOG and his children's school.

Mr. Akradi objects to The AP's subpoena because, from his perspective, it is unreasonably cumulative or duplicative to information The AP may obtain from Mr. Reger or NOG. Mr. Akradi also contests the relevance of the information sought from the subpoena. And finally, Mr. Akradi contends that the subpoena is unduly burdensome and disproportionate to the needs of the case. For these reasons, Mr. Akradi argues that The AP's motion to compel should be denied and he should be awarded attorneys' fees for defending against it.

On September 5, 2025, the Court held a hearing on all three motions to compel. (Doc. 128.) After the hearing, Mr. Reger and The AP met and conferred to narrow the issues. The parties informed the Court via email correspondence on September 17, 2025, "that they agree on the temporal scope of discovery." In particular, "Mr. Reger agrees to produce tax returns from 2006 to present . . . resolving the dispute over Request for Production No. 11[.]" Mr. Reger also "agrees that 2016 to present is an appropriate temporal scope." The parties failed to narrow or resolve any other issue or dispute raised in the motions to compel. The motions are thus ripe for decision.

For the reasons explained below, The AP's Motion to Compel Discovery Responses from Plaintiff Michael Reger (Doc. 76) is granted in part and denied in part; The AP's Motion to Compel Production of Documents Responsive to Subpoena to Northern Oil and Gas, Inc. (Doc. 83) is denied without prejudice; and The AP's Motion to Compel

6

Production of Documents Responsive to Subpoena to Bahram Akradi (Doc. 112) is denied

without prejudice.

## ANALYSIS

I. **THE AP'S MOTION TO COMPEL DISCOVERY RESPONSES FROM PLAINTIFF MICHAEL REGER IS GRANTED IN PART AND DENIED IN PART.**

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery of "any

nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1)

broadly, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman*

*v. Taylor*, 329 U.S. 495, 501 (1947)), but the scope of discovery includes only what is

relevant to the actual claims or defenses that are at issue, *see Sherman v. Sheffield Fin.,*

*LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). And it is the party that seeks discovery who

must make a threshold showing that the information sought is relevant to the claims or

defenses in the case. *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.

1992)). If that occurs, then "the party resisting production bears the burden of establishing

lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l,*

*Inc.*, No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016)

(quoting *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa

2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also

be "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors important to

a court's proportionality analysis include "the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit." *Id.* A court may

"find that a request on its face is not proportional to the needs of the case, given the

relevance of the requested discovery." *Stan Koch & Sons Trucking, Inc. v. Am. Interstate

Ins.*, No. 18-cv-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020) (quoting

*Klein v. Affiliated Grp., Inc.*, No. 18-cv-0949 (DWF/ECW), 2019 WL 1307884, at *7 n.9

(D. Minn. Mar. 22, 2019)).

Naturally, a party cannot be compelled to produce documents not in its possession.

*WRB, Inc. v. DAMM, LLC*, No. 21-cv-1899 (NEB/TNL), 2022 WL 17844323, at *2 (D.

Minn. Dec. 22, 2022); *Edeh v. Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn.

2013) (when a party "maintains that it does not have the documents requested," "it cannot

be compelled to produce them"). A party's assertion that it has fully produced discoverable

materials must be accepted at face value by the Court. *Bombardier Recreational Prods.,

Inc., v. Arctic Cat, Inc*., No. 12-cv-2706 (MJD/LIB), 2014 WL 5685463, at *7 (D. Minn.

Sept. 24, 2014) (citing *Onwuka v. Fed. Express Corp*., 18 F.R.D. 508, 515 n.2 (D. Minn.

1997)).

## A.    The AP's Motion to Compel is denied as moot as to the temporal scope of discovery.

After the hearing on The AP's Motion to Compel, the parties met and conferred to

narrow the scope of their disputes. Mr. Reger agreed to produce tax returns from 2006 to

present and agreed that 2016 is an appropriate temporal scope for the remainder of

discovery. Based on the parties' post-hearing agreement, the Court concludes that the temporal scope for production of Mr. Reger's tax returns is 2006 to present, and the temporal scope for the rest of discovery is 2016 to present. Accordingly, The AP's Motion to Compel is denied as moot as to the temporal scope of discovery.[1]

**B.    The AP's Motion to Compel is granted as to Interrogatory Nos. 7, 8, 9, 13 and denied as to Interrogatory Nos. 4, 5, and 6.[2]**

The Court first turns to the Interrogatories for which The AP seeks complete answers. The AP asks the Court to Order Mr. Reger to provide complete answers to Interrogatory Nos. 4, 5, 6, 7, 8, 9, and 13. (Doc. 80 ¶ b.)

In Interrogatory No. 4, the AP asks Mr. Reger to identify all "criminal, civil, administrative, regulatory, or legislative" proceedings he has been part of "including lawsuits, arbitrations, investigations, or other proceedings[.]" (Doc. 79-4 at 9.) From the AP's perspective, Interrogatory No. 4 relates to the question of the proximate cause of Mr. Reger's damaged reputation. And although Mr. Reger listed seven lawsuits or proceedings in which he has been involved, The AP questions the completeness of his response because The AP itself is "aware of at least nine lawsuits." (Doc. 78 at 15-16.) Upon reviewing The AP's request, the Court finds that while the burden to Mr. Reger of providing a more complete list of prior litigation is minor, so too is its relevance to this case—especially

---

[1] Based on the parties' correspondence The AP's Motion to Compel is also denied as moot as to Request for Production No. 11 which requests "[a]ll of Your tax returns, regardless of jurisdiction, including all attachments, schedules and worksheets, for tax years 2005 to the present." (*Id*. at 10.)

[2] The Court addresses only those Interrogatories The AP listed in its Proposed Order. (Doc. 80.) The AP does not address Interrogatory Nos. 1-3 or 10-12 in its Proposed Order, and so the Court construes those interrogatories as not in dispute. (*See id*. ¶ b.)

considering The AP's limited need for information it apparently already possesses and has the ability to obtain. The AP's Motion to Compel is therefore denied as to Interrogatory No. 4.

Interrogatory No. 5 asks Mr. Reger to describe his "knowledge or participation, or lack thereof, of the stock price manipulation scheme at Dakota Plains." (*Id.* at 11.) Interrogatory No. 6 asks Mr. Reger to describe his "knowledge or participation, or lack thereof, in concealing Your relationship to the foundation, creation, management and day-to-day operations of NOG and Dakota Plains." (*Id.* at 11-12.) The AP asserts that these interrogatories relate to the Dakota Plains fraud scheme and resulting shareholder lawsuit that are the subjects of The AP's article at the heart of this litigation. According to The AP, this information it seeks is relevant to the substantial truth doctrine and how Mr. Reger himself has framed his claims. From The AP's vantage, because Mr. Reger claimed that The AP's report caused the "business community" to believe that he had "engaged in criminal misconduct," he can only show the article was materially false by proving that he did not engage in criminal conduct. (*Id.* at 24.) Even though Mr. Reger never faced a criminal trial (let alone a conviction), The AP insists it is entitled to this information because it goes to Mr. Reger's criminal culpability.

The Court disagrees. Mr. Reger was never criminally prosecuted, and so his criminal culpability is not at issue. Moreover, in response to Interrogatories No. 5 and 6 Mr. Reger answered that his only knowledge of the Dakota Plains fraud scheme "derives from public sources" including "articles on the matter and filings in the criminal proceedings," and "Plaintiff's complaint in *Reger v. Magarian*, No. 27-CV-24-2994 (Henn. Cnty. Minn.)."

(Doc. 79-4 at 11.) The Court has reviewed Mr. Reger's responses and concludes that Mr. he has sufficiently answered Interrogatory Nos. 5 and 6. Although The AP may "quibble with the veracity" of Mr. Reger's answers, this "is not a basis for a motion to compel." *WRB, Inc. v. DAMM, LLC*, No. 21-cv-1899 (NEB/TNL), 2022 WL 17844323, at \*3 (D. Minn. Dec. 22, 2022). A motion to compel is just what it says—a motion for an order compelling another party to answer, not a vehicle to challenge the truthfulness of the response. *Id.* The AP's Motion to Compel as to Interrogatory Nos. 5 and 6 is denied.

In Interrogatory No. 7, The AP asks Mr. Reger to describe his economic, reputational, emotional, or other damages, and to identify all persons with knowledge of his damages, including healthcare and mental health professionals from 2005 to present. (Doc. 79-4 at 12.) Interrogatory No. 8 seeks information about any action Mr. Reger took to mitigate his injury or damages and again identify all persons with knowledge of his actions. Interrogatory No. 9 asks Mr. Reger to identify "five persons still living whom You consider to have been Your closest personal friends during the period 2005-present and . . . identify the five persons still living whom You consider to have been your closest business colleagues or associates." (*Id.* at 14.) In Interrogatory No. 13, The AP requests that Mr. Reger describe "all communications between You and any third party concerning The AP, the Challenged Report, this lawsuit, or any of the allegations in the Complaint." (Doc. 79-13 at 10.)

Each of these interrogatories seeks information related to Mr. Reger's social and professional reputation; his economic, reputational, emotional, or other damages; steps he took to mitigate any damages; and any communication about this lawsuit. The Court finds

11

that information sought is relevant and proportional to the needs of the case. Accordingly, The AP's Motion to Compel is granted as to Interrogatory Nos. 7, 8, 9, and 13.

**C.     The AP's Motion to Compel is granted in part as to Requests for Production No. 1, 2, 3, 5, 10, 12, 14, 15, and 17-20 and denied as to Requests for Production No. 4, 6, 7, 8, 9, 13, 16.**

The Court next addresses The AP's Requests for Production of Documents. The AP asks the Court for an Order compelling Mr. Reger to produce all non-privileged documents responsive to its July 8, 2024, and November 5, 2024 Requests for Production no later than 30 days from this Order's date. (Doc. 80 ¶ 4.)

In Request for Production No. 1, The AP seeks "[a]ll documents and communications You reviewed, referred, or relied upon to answer these Requests or The AP's Requests." (Doc. 79-3 at 4.) Request for Production No. 2 asks for "[a]ll documents and communications that bear or that You contend bear, in any manner, on the truth or falsity of the Challenged Report." (*Id.*) Request for Production No. 3 requires "[a]ll documents and communications reflecting Your belief that The AP 'must have known' the Challenged Report was false." (*Id.* at 5.) The Court finds these requests are relevant and proportional to the needs of the case. Accordingly, The AP's Motion to Compel is granted as to Request for Production Nos. 1-3.

Request for Production No. 5 asks for "[a]ll documents and communications between You and any Journalist or news organization, including but not limited to The AP, from January 1, 2005, to present, including but not limited to requests for interviews, requests for comment, fact-checking, news reports, requests for correction, or litigation threats." (*Id.* at 7.) The AP argues this request is relevant to Mr. Reger's reputation within

12

the oil and gas industry and his relationship with the media. Mr. Reger objects. The Court finds this request is relevant to the claims and defenses in this action, and proportional to the needs of the case, especially considering the parties' agreement to limit the temporal scope to 2016 to the present. The AP's Motion to Compel is thus granted as to Request for Production No. 5.

Request for Production No. 10 calls for "[a]ll documents and communications concerning Your claimed damages, including all documents and communications concerning Paragraphs 44-53 of Your Complaint or reviewed, referred, or relied upon to answer Interrogatory Nos. 2, 7-8." (*Id.* at 10.) The AP argues that this request is relevant to Mr. Reger's allegation that he is entitled to $50 million in damages. The AP claims, however, that Mr. Reger has refused to produce any information or documents to support his claim the "he lost income, employment opportunities, or any multi-million-dollar partnerships" because of The AP's report. (Doc 78 at 18.) Mr. Reger objects to this request as overly broad and not proportional to the needs of the case. Mr. Reger's objection is overruled. The AP's request is relevant and proportional to the needs of the case, especially considering the amount in controversy. As a result, The AP's Motion to Compel is granted as to Request for Production No. 10.

In Request for Production No. 12, The AP asks for "[a]ll non-identical copies of Your resumé or curriculum vitae which You have provided to any third party since January 1, 2006, and any non-identical copy of any biography of You posted online since January 1, 2006." (Doc. 79-3 at 11.) Request for Production No. 14 calls for "[a]ll documents and communications between You and any other person concerning The AP, the Challenged

Report, or this lawsuit." (*Id*. at 12.) After reviewing these requests, the Court finds that they are both relevant and proportional to the needs of the case. Accordingly, The AP's Motion to Compel is granted as to Request for Production Nos. 12 and 14.

Request for Production No. 15 requests

> To the extent you seek damages for emotional distress arising from Counts I-III of your Complaint, all documents concerning your medical and/or psychological health from January 1, 2005, to present, including related to any prescription medications you have been prescribed or have taken, whether these records are held by You or third parties under Your control or direction.

(*Id*. at 13.) Mr. Reger objects but stated that he will supplement his response regarding emotional distress. (*Id*.) After reviewing this request, the Court finds that it is directly relevant to Mr. Reger's damages claims and proportional to the needs of this action. As a result, The AP's Motion to Compel is granted as to Request for Production No. 15.

Through Request for Production No. 17, The AP seeks

> All Documents and Communications concerning Your financial transactions with persons identified in either party's initial disclosures or in response to Interrogatory Nos. 2 and 9, excluding Your family members, but including and not limited to Bahram Akradi, Adrian Kadue, Gregg Smith, Marty Davis, John Whitaker, Jason Mikunda, and Nick Peterson. For avoidance of doubt, this Request includes Documents and Communications showing transaction histories on applications such as ApplePay, Venmo, Paypal, and any other similar tool that facilitates digital, cashless transactions.

(Doc. 79-13 at 4-5.) The AP argues that this request is also relevant to Mr. Reger's damages claim. Mr. Reger objects on the basis that this request is overly broad because it requests "all documents and communication" and "does not limit the subject of requested financial transactions to anything remotely related to any relevant matters[.]" (*Id*. at 5.) Mr. Reger also objects to the request "because it does not contain any reasonable date range[.]" (*Id*.)

14

Having reviewed the request, the Court finds it is relevant and proportional to the needs of the case, particularly considering the parties' agreement to a temporal scope of 2016 to present. However, Mr. Reger has a point that the request is overbroad to the extent that complete responses would include relatively modest financial transactions in a case about $50 million in damages. As such, The AP's Motion to Compel is granted as to Request for Production No. 17 but limited to financial transactions exceeding $5,000.

Next, in Request for Production No. 18, The AP asks Mr. Reger for "[a]ny written, recorded, or transcribed statements, declarations, affidavits, or reports, signed or unsigned, from or by any individual concerning The AP, the Challenged Report, this lawsuit, or any of the allegations in the Complaint. (*Id*. at 5.) And Request for Production 19 requests "[a]ll [d]ocuments and [c]ommunications requested or received from any third party concerning The AP, the Challenged Report, this lawsuit, or any of the allegations in the Complaint." (*Id*. at 6.) Finally, in Request for Production No. 20, the AP seeks

> All documents and Communications concerning any entity, including but not limited to any Foundation, Trust, Limited Liability Company, related to any member of the Reger Family. For avoidance of doubt, this Request includes:
>
> - certificates of formation;
> - LLC/LP agreements;
> - any amendments or restatements;
> - articles of incorporation;
> - bylaws;
> - operating agreements;
> - trust documents;
> - EIN documentation;
> - financial statements (whether internal or externally prepared), including notes, for the period January 1, 2005 through present;
> - complete tax returns including statements and schedules for tax years 2005 through 2023;

15

- electronic versions (Microsoft Excel) of the detailed general ledgers or transaction ledgers for the period January 1, 2005 through present;
- complete bank records, including bank statements, cancelled checks, wire transfer advices (sic), deposit slips, credit and debit memos, signature cards, and operating account information, for all accounts for the period January 1, 2005 through present.

(*Id.* at 7.) The AP argues that each of these requests is relevant to Mr. Reger's reputation and damages. Mr. Reger objects to Request Nos. 18 and 19 because they seek privileged information, and he objects to Request No. 20 because it seeks documents and communications related to "any entity" for both himself and "any of his family members[.]" (*Id.*) The Court finds Request Nos. 18 and 19 are relevant and proportional to the needs of the case. The Court also finds that Request No. 20 is relevant and proportional to the needs of the case, subject to the following limitation: the request shall only documents and communications related to Mr. Reger himself; it shall not seek documents and communications from any of his family members. Accordingly, The AP's Motion to Compel is granted as modified for Request Nos. 18, 19, and 20.

Request for Production No. 4 asks Mr. Reger to produce

All documents and communications concerning any civil, criminal, administrative, arbitral, regulatory or legislative, lawsuit, investigation, or other proceeding, whether merely threatened or instituted, in which You were a party (on Your own behalf or on behalf of another Person), suspect, target of investigation or proceeding, a witness, intervenor, or for which you provided funding, from January 1, 2005 to the present.

(Doc. 79-3 at 5-6.) Defendant's request includes, but is not limited to "all documents and communications related to any of the following":

16

- *In re Michael L. Reger* (SEC. Oct. 31, 2016), including the investigation by and any negotiation or settlement with the SEC;

- *Reger v. N. Oil & Gas, Inc*., No. 27-CV-16-12311 (Henn. Cnty. Minn.), including specifically, but without limitation, any documents, communications and written responses produced during discovery related to the allegations that NOG ruined Your reputation;

- *Fries v. N. Oil & Gas, Inc*., 285 F. Supp. 3d 706 (S.D.N.Y. 2018) or any other claim regarding insider trading while You were employed by NOG or purporting to act on behalf of NOG;

- the Dakota Plains Shareholder Lawsuit;

- *Gruber v. Gilbertson*, No. 19-mc-00019-DSD-BRT (D. Minn. Mar. 26, 2019), including specifically, but without limitation, about what You characterized as your "full[] cooperation with the investigations" into Dakota Plains, as stated in the Memorandum of Law in Support of Defendant Michael L. Reger's Motion to Quash Third-Party Subpoena Served on Agency Trading Group, Inc.;

- *United States v. Ryan Gilbertson*, No. 17-cr-00066 (PJS/HB) (D. Minn.);

- *Michael and Brittany Reger, On Behalf of their Minor Child J.M.R. v. Providence Acad. et al*., 27-CV-23-17095 (Henn. Cnty. Minn.);

- *Michael and Brittany Reger, On Behalf of their Minor Child W.J.R. v. Providence Acad. et al*., 27-CV-23-17192 (Henn. Cnty. Minn.);

- *Reger v. Magarian et al*., No. 27-CV-24-2994 (Henn. Cnty. Minn.).

(*Id*.)

In Request for Production No. 6, The AP asks Mr. Reger for "[a]ll documents and communications concerning or reflecting the ownership of Dakota Plains stock shares by You, any of Your relatives, or any of Your personal friends or acquaintances." (*Id*. at 7.) Request for Production No. 7 seeks "[a]ll documents and communications reflecting the drafting, editing or submission of any filings with the SEC submitted on behalf of NOG or

Dakota Plains, including but not limited to any Form 10-K or Form 8- K." (*Id.* at 8.)
Request for Production No. 8 asks Plaintiff to produce "[a]ll documents and
communications between You and Ryan Gilbertson or Douglas Hoskins from January 1,
2005 to the present." (*Id.* at 9.) Request for Production No. 9 calls for Mr. Reger to produce
"[a]ll documents and communications between You and James Randall Reger, Weldon W.
Gilbertson, Craig M. McKenzie, or James L. Thornton, concerning Dakota Plains from
January 1, 2005, to present." (*Id.* at 9.)

In The AP's estimation, documents responsive to Request Nos. 4, 6, 7, 8, and 9 are
relevant because they are related to the Dakota Plains fraud scheme and resulting
shareholder lawsuit that are the subject of The AP's article at the heart of this litigation.
The AP contends these documents are particularly probative of Mr. Reger's "criminal
culpability" and such evidence goes directly to the substantial truth of The AP's article.
The AP also claims that documents responsive to Request No. 4 are relevant to the
determination of the proximate cause of any damage to Mr. Reger's reputation. Mr. Reger
counters that the AP's requests are both irrelevant and overly broad. To the extent that The
AP seeks discovery related to the *Gruber* civil securities fraud case, Mr. Reger protests that
the discovery sought is irrelevant because it was solely a civil matter, and therefore no item
of evidence or document related to the Dakota Plains fraud scheme or shareholder lawsuit
could support the substantial truth of The AP's article.

The Court agrees with Plaintiff. Request Nos. 4, 6, 7, 8, and 9 are, for large part,
irrelevant. Defendant's quest to demonstrate Mr. Reger's criminal culpability based on his
civil case—that is, repeating the conduct that led to this lawsuit—mostly defies logic. To

18

the extent that Request No. 4 is marginally relevant to the proximate cause of the alleged harm to Mr. Reger's reputation and his status as a limited purpose public figure, its limited relevance is not proportional to the needs of the case given the public availability of court documents that could conceivably be relevant to Mr. Reger's reputation. Accordingly, The AP's Motion to Compel is denied as to Request for Production Nos. 4, 6, 7, 8, and 9.

Request for Production No. 13 seeks "[a]ll documents and communications in which a person expressed any opinion about You." (*Id*. at 11.) Defendant argues that this request is relevant to Mr. Reger's reputational harm. The relevance of this request is clear. But as written, the Court finds this request overbroad. Although The AP has agreed to limit the temporal scope of its discovery requests to 2016 to present, this request is still too broad, without limitation to document type, subject matter, or even the proponent of the opinion. As a result, The AP's Motion to Compel is denied as to Request for Production No. 13.

Request for Production No. 16 seeks "[a]ll [d]ocuments and [c]ommunications concerning any interaction between You or any member of Your family and law enforcement . . . includ[ing] interactions with local law enforcement, such as the Minnetonka or Wayzata Police Departments or the Hennepin County Sheriff's Office (including its Water Patrol Unit), and federal investigative agencies." (Doc. 79-13 at 4.) Defendant asserts that this request is relevant to Mr. Reger's reputation and alleged damages. Plaintiff contends that the request is overly broad, unduly burdensome, and irrelevant. The Court agrees with Plaintiff. This request, as written is overly broad, and does not limit the subject of interactions to anything relevant to this action, especially as it

19

pertains to Mr. Reger's family. Accordingly, The AP's Motion to Compel is denied as to Request for Production No. 16.

**D.    The AP is not entitled to Attorneys' Fees and Costs.**

The AP seeks fees and costs from Mr. Reger for litigation of this motion. If a motion to compel is granted in part and denied in part, a court may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Based on the record before it, the Court concludes that expenses are unwarranted at this time.

**II.    THE AP's MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO SUBPOENA TO NORTHERN OIL AND GAS, INC. IS DENIED WITHOUT PREJUDICE.**

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To weigh what is proportional to a case's needs, courts consider factors including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

When a party wishes to compel a nonparty to produce discovery in a lawsuit, Rule 45 provides that a nonparty may be commanded by subpoena to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a). But "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid

imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

The AP argues that NOG should be compelled to produce documents responsive to its subpoena because the subpoena seeks evidence that is both facially relevant and proportional to the needs of the case. According to The AP, its subpoena is narrowly tailored "to alleviate any supposed burden on NOG," (Doc. 110 at 11) and seeks evidence relevant to the elements of Mr. Reger's defamation claims, his reputational harm, its cause, the material falsity and substantial truth of the AP's article, and evidence establishing Mr. Reger as a limited purpose public figure. NOG counters that The AP's motion should be denied because its discovery requests are unduly burdensome, not needed, and not relevant.

The AP's demand that NOG produce documents responsive to its subpoena as written—beyond what it has already produced—is unduly burdensome and not proportional to the needs of the case. NOG represents to the Court that on November 14, 2024, it produced documents related to Mr. Reger's termination from NOG because of The AP's article; documents related to Mr. Reger's removal from NOG's website because of the article; communications to or from Mr. Reger after The AP published the article; documents concerning Mr. Reger's reputation because of the article; and documents related to the article or this litigation. (Doc. 86-2.) After meeting and conferring with The AP, NOG produced non-privileged documents from six months before the publication of The AP's article, January 1, 2022, through the date of the subpoena, August 29, 2024, generally relating to Mr. Reger's removal from NOG's website and Mr. Reger's reputation. (Doc. 111.)

NOG represents that its counsel has already "spent over 400 hours responding to The AP's subpoena, including collecting and reviewing over 40,000 documents, most of which are not responsive." (Doc. 110 at 3.) If NOG were required to expand its review to documents starting in 2016, as The AP insists, then the collection of documents would swell to more than 105,000—not including documents from other third parties from whom The AP demands that NOG collect, review, and produce—requiring potentially hundreds of more attorney hours to review and produce." (*Id.* at 4.) During oral argument on the motion, The AP was unmoved by NOG's representation of the burden it has already undertaken to produce documents responsive to The AP's subpoena. When invited to address steps The AP would take to avoid unduly burdening NOG to compel the production of documents dating to 2016, The AP responded that the added burden was not its fault, but Mr. Reger's for failing to produce the documents in the first instance, and therefore any added burden on NOG should not count against The AP.

The Court concludes, based on the record before it, that NOG has satisfied its discovery obligations, and any added production responsive to The AP's subpoena would be unduly burdensome, without The AP first obtaining discovery from Mr. Reger. Accordingly, The AP's Motion to Compel Production of Documents Responsive to Subpoena to Northern Oil and Gas, Inc. (Doc. 83) is denied without prejudice. If, after Mr. Reger responds to The AP's discovery requests, The AP still believes it is necessary to compel NOG to produce documents responsive to its subpoena, it may renew its motion to compel.

Despite the Court's decision to deny The AP's motion, NOG is not entitled to attorneys' fees. If a court finds a party or attorney failed to take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena, Rule 45 empowers courts to "impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1). While NOG has established that it incurred significant burden and expense to comply with the subpoena, on balance the Court concludes that fees are unwarranted at this time. Additional motion practice may result in the Court revisiting this determination.

## III. THE AP'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO SUBPOENA TO BAHRAM AKRADI IS DENIED WITHOUT PREJUDICE.

The same standard that applies to The AP's motion to compel NOG to produce responsive documents also applies to The AP's Motion to Compel Production of Documents Responsive to Subpoena to Bahram Akradi. Much like with its motion to compel NOG to produce documents, The AP argues that its subpoena is facially relevant and proportional to the needs of the case. From The AP's perspective, the subpoena seeks evidence of Mr. Reger's reputational harm and its cause; evidence of the material falsity and substantial truth of The AP's article; and evidence that Mr. Reger is a limited purpose public figure. Beyond the subpoena's relevance, The AP also argues that the discovery sought is neither overly broad nor unduly burdensome.

Mr. Akradi disagrees. First, he asserts that the subpoena is unreasonably cumulative or duplicative because it seeks information The AP should obtain from Mr. Reger or NOG first. Second, he contests that many of the subpoena requests are not relevant to any of the

party's claims or defenses. And finally, Mr. Akradi objects to the subpoena's "lack of appropriate parameters," which from his perspective, renders the subpoena "unduly burdensome and disproportionate to the needs of this case." (Doc. 126 at 16.) In Mr. Akradi's estimation, because The AP has failed to take reasonable steps to avoid imposing undue burden or expense, The AP's motion should be denied, and he should be awarded reasonable attorneys' fees.

But while Mr. Akradi opposes producing documents responsive to The AP's subpoena, during oral argument on the motion, Mr. Akradi's counsel proposed to have Mr. Akradi sit for deposition by The AP. The AP's counsel did not agree outright to Mr. Akradi's counsel's proposal, but as the party issuing and serving the subpoena, The AP "must take reasonable steps to avoid imposing undue burden or expense on" non-party Mr. Akradi. Fed. R. Civ. P. 45(d)(1). Therefore, before The AP can compel Mr. Akradi to take such burdensome steps as forensically imaging his cell phone and searching his email and financial transactions for documents responsive to The AP's subpoena (Doc. 126 at 9), The AP must show that it has sought to avoid imposing such *undue* burdens. Deposing Mr. Akradi avoids imposing undue burden while also allowing The AP to ask him about topics and documents it believes are relevant to the case. Accordingly, The AP's Motion to Compel Production of Documents Responsive to Subpoena to Bahram Akradi (Doc. 112) is denied without prejudice. If, after Mr. Akradi's deposition, The AP still believes it is necessary to compel Mr. Akradi to produce documents responsive to its subpoena, The AP may renew its motion.

Despite the Court's decision to deny The AP's motion to compel, the Court concludes that Mr. Akradi has not established an entitlement to fees at this time.

## ORDER

Accordingly, based on the above and on all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1. The AP's Motion to Compel Discovery Responses from Plaintiff (Doc. 76) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The AP's Motion is **GRANTED** as to **Interrogatory Nos. 7, 8, 9,** and **13**;

   b. The AP's Motion **is GRANTED IN PART** as to **Request for Production Nos. 1, 2, 3, 5, 10, 12, 14, 15, 17, 18, 19,** and **20; and**

   c. Mr. Reger is Ordered to provide complete answers to the above Interrogatories and produce all non-privileged documents responsive to the above Requests for Production no later than 30 days from this Order's date.

   d. The AP's Motion is **DENIED** as to **Interrogatory Nos. 4, 5,** and **6**; and

   e. The AP's Motion is **DENIED** as to **Request for Production Nos. 4, 6, 7, 8, 9, 13,** and **16**.

2. The AP's Motion to Compel Production of Documents Responsive to Subpoena to Northern Oil and Gas, Inc. (Doc. 83) is **DENIED WITHOUT PREJUDICE**;

   a. If after Mr. Reger produces his responses to The AP's discovery requests The AP still believes it is necessary to compel NOG to produce documents responsive to its subpoena, The AP may renew its motion to compel.

3. The AP's Motion to Compel Production of Documents Responsive to Subpoena to Bahram Akradi (Doc. 112) is **DENIED WITHOUT PREJUDICE**;

   a. The AP is ordered to subpoena Mr. Akradi to sit for a deposition. If after Mr. Akradi's deposition, The AP still believes it is necessary to move to

compel Mr. Akradi to produce documents responsive to its subpoena *duces tecum*, it may renew its motion to compel.

DATED:  October 22, 2025                    *s/Douglas L. Micko*_____
                                             DOUGLAS L. MICKO
                                             United States Magistrate Judge